UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S-EVERGREEN HOLDING CORP,<br><br>                Plaintiff,<br>    v.<br><br>AON RISK INSURANCE SERVICES WEST INC,<br><br>                Defendants. | Case No. C19-1589 RSL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>NOTING DATE: NOVEMBER 9, 2021 |

This matter comes before the Court on Defendant's Motion for Summary Judgment on Plaintiff's claims (Dkt. 29, 53). Plaintiff has opposed defendant's motion (Dkt. 35) and defendant has filed a reply (Dkt. 34, 67) in support of the motion. The Court has also heard oral argument on this matter. The parties waived their right to a jury trial, so this case would be set as a bench trial. Dkt. 14, at 5. For the reasons set forth below, the undersigned recommends that the Court should DENY defendant's motion for summary judgment.

      I.      FACTUAL AND PROCEDURAL BACKGROUND

Defendant Aon and Plaintiff Savers (S-Evergreen is referred to as "Savers") entered into a Services Agreement[1] in 2015 whereby Aon received $138,000 a year to provide various insurance brokerage and related services. Dkt. 30-3; Dkt.54. The

---

[1] The Services Agreement contained the following choice of law provision: "This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard for its conflicts of law rules." Dkt. 30-3 at 7, ¶ 21; Dkt. 54 at 7, ¶ 21.

REPORT AND RECOMMENDATION - 1

Services Agreement included a provision that neither party would be "liable to the other for any indirect, incidental, special, consequential, exemplary, punitive or reliance damages". *Id.* at 6, ¶ 16. The Agreement had a three-year term, ending on April 21, 2018. *Id.* at 1, ¶ 1.

At the time the parties entered into the Agreement, Savers had an active Directors & Officers (D&O) and fiduciary liability policy with AIG. Dkt. 30-5, at 75:1-15. The policy featured a $10 million limit for D&O coverage and contained a discovery provision that allowed Savers to purchase a six-year extended reporting period for a set price of 150% of the expiring annual premium. Dkt. 3-9, at 5; Dkt. 56, at 5. The policy also contained a Notice of Circumstances provision. *Id.* at 15, ¶ 6(c). In Fall 2017, Savers and Aon began discussing renewal of the AIG policy. Dkt. 30-5, at 86:3-23. During this time, Savers was also seeking to restructure its debt and informed Aon of the same. *Id.* at 120:7-11; 122:10-21. On August 3, 2017, AIG issued to Savers a non-renewal on the D&O and fiduciary policy for the October 1, 2017 to October 1, 2018 period. Dkt. 30-11, at ¶ 7.

As a result, Aon obtained quotes from other insurance carriers for the renewal or extension of Savers' policy. Dkt. 30-13. Three insurance carriers, including AIG, provided Aon with quotes. Dkt. 30-15, at 3-4; Dkt. 57, at 3-4.

AIG ultimately provided three coverage options: (1) extend the current D&O and Fiduciary program for 4 months at prorata of the expiring annual premium with no change in terms and conditions; (2) $5,000,000 primary limit for $46,180; only change to the terms and conditions would be the removal of the preset runoff and discovery percentages; or (3) extend the current D&O and Fiduciary program for 6 months at

prorata of the expiring annual premium with the only change in terms and conditions being the elimination of the preset runoff and discovery percentages. *Id.* Savers explained the significance of AIG's proposal to remove the preset runoff and discovery percentages in an email dated September 22, 2017. Dkt. 30-21, at 00005288; Dkt. 60, at 00005288.

On September 29, 2017, after discussing the options with Aon, Savers instructed Aon to bind D&O coverage with AIG for a six-month period, therefore choosing the third option. Dkt. 30-24. On the same day, Aon emailed AIG requesting that AIG proceed to bind the 6-month extension option. Dkt. 30-25, at 2.

On October 2, 2017, the day after Savers' D&O policy had expired, AIG informed Aon via email of the changes that would appear in the extension via an endorsement, which included removing the Notice of Circumstances provision of the policy. *Id.*, at 1. AIG wrote, "the extension was 4 months until 2/1/18 for $22,225. If [Savers] wanted to elect 6 months [AIG] would need to remove Discovery and Notice of Circumstances." *Id.* Aon responded to this email – "Please proceed to bind the 6-month extension for both D&O and fiduciary as quoted." *Id.* AIG emailed Aon a copy of the endorsement later that day. *Id.* at 3. On October 4, Aon emailed Savers a copy of the same endorsement. Dkt. 30-30. The endorsement called for deletion of the Notice of Circumstances provision. *Id.*

On November 1, 2017, prior to the end of the Services Agreement term, Savers issued a termination letter to Aon. Dkt. 30-31. Non-party Lockton Companies, Inc. ("Lockton") served as Savers new broker. Dkt. 30-32. Lockton brought to Savers' attention the deletion of the Notice of Circumstances provision from the AIG policy. Dkt 30-5, at 199:16-17. Savers requested that Aon contact AIG to correct and re-issue the

policy. *Id.* at 223:16-24. Aon declined to do so on the grounds that it no longer served as Savers' broker. Dkt. 30-22, at 212:3-5; 212:19-213:6.

In April 2018, Lockton approached at least 50 insurance carriers in connection with Savers' renewal of D&O coverage because the six-month extension had completed. Dkt. 30-33, at 0001490-93; Dkt.63, at 0001490-93. Lockton recommended that Savers keep its coverage with AIG. Dkt 37, ¶ 7. Savers alleges that it became aware of circumstances that it would have reported under the AIG policy had the Notice of Circumstances provision still been part of its D&O coverage. Dkt. 36, ¶ 4; Exh. 1, at 54:11-55:22, 59:20-61:23, 70:19-71:8, 75:24-76:12.

In early 2019, AIG advised it would not renew the policy again. Dkt. 39, at Ex.. 14.  During this time, Savers was preparing to restructure the company. Dkt. 30-4, at ¶ 10; Dkt. 65 at 10. On March 6, 2019, AIG offered Savers two new options for a six-year tail on the expiring policy- (1) a $5 million limit at a premium of $950,000; or (2) a $2.5 million limit at a premium of $400,000. Dkt. 30-2 at ¶14. Savers argues that no other insurer would quote a tail policy unless Savers could first discharge its knowledge of potential claims via a notice of circumstances into the expiring AIG policy. Dkt. 37 at ¶¶ 9-10. However, Savers alleges that this was not possible because Aon allowed for the notice of circumstances provision to be deleted. Thus, Savers argues that it was forced to purchase an expensive policy from AIG. *Id.*

Savers alleges Aon breached the Services Agreement by failing to procure the coverage requested by Savers or inform Savers of its inability to do so. Dkt. 1, ¶¶ 9.1-9.3 Savers also alleges that Aon's actions constituted ordinary negligence by its failure to exercise due care in its handling of the 2017 renewal. *Id.* at ¶¶ 10.1-10.5. Finally,

Savers alleges that in light of the special relationship between Aon and Savers and Aon's failure to convey accurate information to Savers, Aon is also liable for negligent misrepresentation. *Id.* at ¶¶ 11.1-11.3.

II. DISCUSSION

A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.

*Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, supra). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

### B. Savers Breach of Contract Claim

Savers alleges that Aon breached the Services Agreement by failing to provide critical information regarding the provision cancelling the Notice of Circumstances provision and by failing to take any action to circumscribe the detrimental effects (i.e., purchasing the expensive tail coverage) of such removal. Dkt. 1, ¶¶ 9.1-9.3.

Aon argues that it was not the proximate cause of Savers' damages and further, the alleged damages that Savers seeks are consequential and therefore barred from recovery under express terms of the Services Agreement. Dkt. 29, at 16.

Under New York law, as a general principle, insurance brokers "have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage. *See American Bldg. Supply Corp. v. Petrocelli Group, Inc.,* 19 N.Y.3d 730, 735 (2012). Therefore, to set forth a case for negligence or breach of contract against an insurance broker, a plaintiff must

establish that a specific request was made to the broker for the coverage that was not provided in the policy. *See Hoffend & Sons, Inc. v. Rose & Kiernan, Inc.,* 7 N.Y.3d 152, 155 (2006).

However, the responsibility of an insurance broker differs when there exists a "special relationship." *See Hoffend,* 7 N.Y.3d at 158. Where a special relationship develops between the broker and client, courts have indicated that the broker may be liable, even in the absence of a specific request, for failing to advise or direct the client to obtain additional coverage. *See Murphy v. Kuhn*, 90 N.Y.2d. 266, 272-73 (1997). In *Murphy,* the court recognized that "particularized situations may arise in which insurance agents, through their conduct or by express or implied contract with customers and clients, may assume or acquire duties in addition to those fixed at common law" and that the question of whether such additional responsibilities should be "given legal effect is governed by the particular relationship between the parties and is best determined on a case-by-case basis." *Id.* at 272.

There are three exceptional situations that may give rise to a special relationship, thereby creating an additional duty of advisement: "(1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on." *Id.*

Here, the proof submitted by Aon in support of its summary judgment motion did not satisfy its initial burden of establishing the absence of a material issue of fact as to

the existence of a special relationship. To the contrary, viewed in the light most favorable to Savers, the evidence suggests that all three exception circumstances in *Murphy* could apply here. *Id.* Specifically, there is evidence that Aon informed Savers that the only change in coverage for the six-month extension from AIG was the elimination of the runoff and discovery percentages. Dkt. 57; Dkt. 30-15. Relatedly, there is evidence that Savers "specially relied" on Aon's advice when analyzing the pros and cons of each coverage option. *Id.*

Under these circumstances alone, the Court should not dismiss the breach of contract claim. It is true that a special relationship in the insurance brokerage context is the exception, not the norm, and it remains to be determined whether a special relationship existed here. To prevail on its claim, Savers bears the ultimate burden of proving that a special relationship did in fact arise.

Furthermore, with respect to the issue of whether damages sought by Savers are precluded by the Services Agreement, "in general, the precise demarcation between direct and consequential damages is a question of fact…." *Am. Elec. Power Co.*, 418 F. Supp. 435, 459-460 (S.D.N.Y. 1976) (where the parties had excluded liability for consequential damages and provided examples of such excluded damages in their contract, it was "likely that many of the categories of damages sought by the plaintiffs will ultimately be deemed consequential…," but "the precise scope of direct damages must be left for resolution at trial"). Direct damages are typically expectation damages, measured by what it would take to put the non-breaching party in the same position that it would be in had the breaching party performed as promised under the contract." *Latham Land I, LLC v. TGI Friday's, Inc.*, 96 A.D.3d 1327, 1331 (3rd Dep't

2012) (where the plaintiff sought to recover "the loss of the benefit of the bargain," the damages sought were not barred by a contractual provision excluding consequential damages). By contrast, consequential damages "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach," such as lost profits. *Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d. Cir. 2000).

Concerning simply whether it is possible for Savers to state a claim for such damages under the terms of the Services Agreement, this Court cannot find as a matter of law that Savers' damages are precluded consequential damages. If direct damages are "what it would take to put the non-breaching party in the same position that it would be in had the breaching party performed as promised under the contract," *Latham Land I*, 96 A.D.3d at 1331, Savers' enumerated costs might fall within that definition.

Thus, Aon 's motion for summary judgment as to Savers' breach of contract claim should be denied.

C. Savers Negligence and Negligent Misrepresentation Claims

1. Negligence

Aon argues that Savers' tort-based claims are foreclosed by the economic loss doctrine because the claims center on the terms of the Services Agreement and Aon does not owe Savers any extra-contractual duties. Dkt. 29, at 20.

"New York law holds that a negligence action seeking recovery for economic loss will not lie." *Cty. of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984). "[I]f the parties have a remedy in contract, they may not also bring claims sounding in tort that claim only economic damages independent of physical injury or

damage to property." *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018). The doctrine "rests on the principle that economic losses arising from injury to expectancy interests created by contract ought to be brought as contract claims." *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018). "[A]n exception to the economic loss doctrine exists where the defendant has a duty independent of contractual obligations." *Holborn*, 304 F. Supp. 3d at 397.

As discussed above, if there is a special relationship between the broker and client, a broker may be liable, even in the absence of a specific request. *See Voss v. Neth., Ins. Co.*, 22 N.Y.3d 728 (N.Y. 2014). Based on the evidence, taken in the light most favorable to the non-moving party, a special relationship may have existed between the parties in addition to, and separate from, the terms of their contract. If so, a duty independent of contractual obligations would exist. *See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F.Supp.3d 123, 126 (S.D.N.Y. 2019). Further, the question whether negligence on the part of an insurance agent or broker proximately caused a client's losses "should generally be resolved by the factfinder." *See Voss,* 22 N.Y.3d at 737.

Here, the evidence raises triable issues of fact as to whether plaintiff and defendant had a special (extra-contractual) relationship and, if so, whether defendant proximately caused plaintiff's loss. Thus, Aon's motion for summary judgment on Savers' negligence claim should be denied.

### 2. Negligent Misrepresentation

"[A] limited exception [to the economic loss doctrine] exists for claims of negligent misrepresentation, as long as there is a showing that there was either actual privity of contract between the parties or a close relationship that approximates privity." *Cornelia Fifth Ave., LLC v. Canizales*, No. 12-cv-07660 (ALC), 2017 U.S. Dist. LEXIS 38579, 2017 WL 1034644, at *3 (S.D.N.Y. Mar. 16, 2017). Under such circumstances, a defendant may be liable for negligent misrepresentation.

> where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage, provided that such information was expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all.

Id. (internal quotation marks omitted).

Here, even if the economic loss doctrine applied, there is evidence that the exception in *Cornelia* applies here. Savers relied on Aon to advise and guide it regarding the terms of AIG's policy; Aon knew that Savers relied on Aon's guidance; and Savers relied on Aon to provide it with important and relevant information. Moreover, Aon admits there was "privity" between Aon and Savers. Dkt. 29 at 2-3; *see* Dkt. 54 at 3, ¶ 6; at 5, ¶ 12, at 8-12. This demonstrates that there could have been "privity" between Aon and Savers sufficient to deny summary judgment.

Accordingly, Aon's motion for summary judgment on Savers' negligent misrepresentation claim should be denied.

D. Motion to Strike Expert Report

Savers also seeks to strike the reports prepared by expert witness Frederick Fisher. Dkt. 41, at 13. Savers claims that Fisher's reports, which were submitted via Aon's counsel's declaration, were unsworn and thus, inadmissible under Federal Rule of Evidence 603 and 802. While Savers is correct in stating that Mr. Fisher's report as submitted under Aon's moving motion is unsworn, Aon rectified this by submitting a signed and sworn affidavit by Mr. Fisher in its reply brief. *See* LCR(b)(3)*. See also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("at the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.") Therefore, Savers' motion to strike Mr. Fisher's reports should be denied.

### III.   CONCLUSION

For the foregoing reasons, Aon's motion for summary judgment should be DENIED. Further, Savers' request to strike Mr. Fisher's reports should be DENIED.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a response. FRCP 72(b)(2).

NOTING DATE: NOVEMBER 9, 2021 - 12

      Accommodating this time limitation, this matter shall be set for consideration on **November 9, 2021**, as noted in the caption.

      Dated this 26th day of October, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge